IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHEILA R. PACK,**

    **Plaintiff,**

                              Civil Action 2:20-cv-1822
                              Chief Judge Algenon L. Marbley
    v.                           Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sheila R. Pack ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 18), the Commissioner's Memorandum in Opposition (ECF No. 21), Plaintiff's Reply (ECF No. 22) and the administrative record (ECF No. 17). For the following reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g) for further consideration.

## I. BACKGROUND

Plaintiff applied for disability benefits on October 18, 2016, alleging disability beginning June 21, 2016. (R. at 265-271.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 202-205; 210-216.) Upon request, a hearing was held on January 17, 2019, at which

1

Plaintiff, represented by counsel, appeared and testified. (R. at 135-165.) A vocational expert ("VE"), Daniel Simone, also appeared and testified at the hearing. (*Id*.) On March 7, 2019, Administrative Law Judge Paula J. Goodrich ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 105-125.) On February 11, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT HEARING TESTIMONY

Plaintiff testified that she lives at a friend's house because he is helping her out. (R. at 141.) Her friend pays the bills but she receives food stamps to help with her food. (*Id.*) In exchange for living there, Plaintiff helps with the cleaning, including running a vacuum, loading the dishwasher, and doing some laundry. (R. at 142.) Her last job had been nearly a year before the hearing. (*Id*.) She worked for Aramark in the kitchen at the London prison. (*Id*.) This job required her to watch the inmates to make sure they did not walk out with food. (Id.) Plaintiff has a driver's license but does not like to drive if she does not have to. (R. at 143.) She completed high school. (*Id*.)

Plaintiff recounted that she also had worked for American Security Insurance answering the telephone and helping clients with insurance claims. (R. at 145.) In that job, she sat at her desk on the phone and was not required to lift or carry anything. (*Id*.) She began having attendance issues because of her anxiety. (*Id*.) She had difficulty tolerating the stress, sitting in a group of people and handling irate customers. (R. at 145-146.)

When asked by the ALJ to explain what kept her from being able to work, Plaintiff responded that she has an issue being around people. (R. at 146.) According to Plaintiff, she does not leave her house very often if she does not have to. (*Id*.) She is anxious and nervous a

lot and has panic attacks that come out of nowhere. (*Id.*) She goes to the grocery store but her friend drives her and she runs in and out. (*Id.*) She does not go to the mall. (*Id.*) She takes medication, including Vistaril for her anxiety and Paxil and Welbutrin for manic depression. (R. at 146-147.) She has received counseling for her mental health concerns but "need[s] to get back to Dr. Alexander and she wants to see "counselor Arlie." (R. at 147.) Scott Golde, the physician's assistant she began treating with after her physician retired, prescribes her medications. (*Id.*) Plaintiff explained that, even with the medication, she has good days and bad days. (R. at 148.) As Plaintiff described it, on a good day, she might be able to visit her grandchildren or her mother. (*Id.*) On other days, when she is a nervous wreck, she does not get dressed or leave the house and prefers to stay in her bedroom. (*Id.*)

In response to the ALJ's question regarding her physical impairments, Plaintiff stated that she has two bad knees and cannot stand for a length of time. (R. at 148.) She sees an orthopedic surgeon, Dr. Zartman, for shots in her knees but she eventually will require knee replacement surgery. (*Id.*)

When questioned by her counsel, Plaintiff testified that she grocery shops early in the morning or late in the evening when the store is less crowded and she is in and out quickly. (R. at 148-149.) She explained that she was very anxious at the hearing. (R. at 149.) According to Plaintiff, this is similar to how her panic attacks start and they require her to go to her bedroom for approximately 45 minutes. (*Id.*) She stated that she has panic attacks once or twice a week but not every day. (*Id.*) Her panic attacks differ from her "regular" anxiety in that, during a panic attack, she fears she is going to have a heart attack or die. (*Id.*) Her "regular" anxiety, however, causes her to be very nervous and sweaty. (*Id.*) Her "regular" anxiety also impacts her ability to pay attention and concentrate. (R. at 150.) She loses interest even in watching a half-

hour show. (*Id.*) Her anxiety would prevent her from holding a job that did not require her to deal with people much. (*Id.*) She might be able to hold a job if she could work from home. (*Id.*)

Plaintiff further explained that, even on a good day, she has problems with anxiety, just not as bad. (R. at 150.) When she did work, it was hard for her to get out the door to go. (*Id.*) She hates to be in a car, riding but especially driving. (*Id.*) She will drive to the grocery if she has to or to the doctor. (R. at 151.) Approximately every two weeks, she will drive 20 minutes to visit her mother where she sees her grandchildren. (*Id.*)

Plaintiff testified that she is 5'2" and weighs 298 pounds. (*Id.*) In addition to knee problems, Plaintiff stated that her weight impacted her breathing and that she could not walk very far without getting out of breath. (*Id.*) Her weight causes her a little back pain if she is standing. (*Id.*) Plaintiff testified that she has diabetes and high cholesterol. (R. at 151-152.) Her feet ache and she has restless leg syndrome, a condition for she takes medication. (R. at 152.) She believes her depression has caused her not to practice personal care. (R. at 153.) She saw Dr. Ward for a while but no longer sees him because her insurance does not cover it. (*Id.*)

### III. RELEVANT MEDICAL EVIDENCE

The record contains treatment notes and opinion evidence from Dr. H. Owen Ward, PhD, a clinical psychologist recognized by the parties as a treating source. The treatment records appear to date from September 4, 2016 through January 24, 2017. (R. at 398-410; 462-468.) On November 9, 2016, Dr. Ward completed a functional assessment. (R. at 406.) The functional assessment scale defined a "moderate" impairment as "needs some help/assistance; [a]ffects but does not preclude the ability to function in the work setting." (*Id.*) The scale further defined a "moderately severe" impairment as "needs substantial help; impairment seriously [a]ffects ability to function." Applying these definitions, Dr. Ward opined that Plaintiff would have moderate

4

impairment in her abilities to understand, remember and carry out instruction; maintain concentration for extended periods of time; maintain activities of daily living; and perform simple tasks on a sustained basis. (*Id.*)  He further opined that Plaintiff would have moderately severe impairment in her abilities to maintain concentration for extended periods of time; function in proximity to others without being distracted or coordinate activities with others; complete a task in a designated period of time without interruption from psychologically based symptoms; maintain socially appropriate behavior, request assistance, and respond appropriately to criticism; perform complex tasks on a sustained basis; and perform regular job functions.  (*Id.*)  Dr. Ward's treatment notes document Plaintiff's anxiety and panic attacks. (R. at 398-410; 462-468.)

## IV.  ADMINISTRATIVE DECISION

On March 7, 2019, the ALJ issued her decision.  (R. at 105-125.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in any disqualifying

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

substantial gainful activity since June 23, 2016, her alleged onset date.  (R. at 110.)  At step two, the ALJ found that Plaintiff has the following severe impairments:  obesity, mild osteoarthritis of the left knee; patellofemoral syndrome of the left knee; major depressive disorder, generalize[d] anxiety disorder, panic disorder with agoraphobia; and dependent personality disorder.  (R. at 111.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 112.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) except she can only occasionally climb ramps or stairs and can never climb ladders, ropes, or scaffolds.  Claimant can occasionally kneel or crouch, but never crawl.  Claimant cannot perform tasks that involve high production quotas, or fast paced production demands, such as assembly line production, but she is able to perform goal-oriented work, such as office cleaning.  Claimant can have occasional interaction with coworkers and the public, but cannot perform tasks involving customer service duties, or which involve confrontation, conflict resolution, directing the work of others, or persuading others.

(R. at 113.)

When assessing Plaintiff's RFC, the ALJ considered the opinion evidence in the record, assigning particular weight to each opinion.  (R. at 116-117.)   Relying on testimony from the VE, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, she can perform jobs that exist in significant numbers in the national economy, including housekeeping cleaner, cafeteria attendant, and photocopying-machine operator.  (R. at 119.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.*)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff alleges several errors, including that the ALJ failed to apply the controlling weight test when evaluating the treating source opinions provided by Dr. Ward. The Court agrees.[2]

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

---

[2]This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the Undersigned need not, and does not, resolve these alternative bases that Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider them if appropriate.

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. Appx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to

explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ did not satisfy the initial step. That is, in considering Dr. Ward's opinion, the ALJ did not perform the mandatory controlling weight analysis. Instead, the ALJ addressed Dr. Ward's opinions as follows:

> Statements that the claimant is disabled, unable to work, can or cannot perform a past job, meets a Listing, or any functionally equivalent assertion are not medical opinions, but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the extent to which they are supported by the record (20 C.F.R. 404.1527(d)(2). As a result, Dr. H. Owen Ward, PhD's statement relating to the claimant's inability to work in a call center, and that she was incapable of working for closed periods of time were not given any weight. (Exc. 1F/7, 11) His medical observations related to the claimant's condition at that time were considered in making the above finding of residual functional capacity. (Ex. 1F/8) Dr. Ward also offered medical opinions in November 2016 that the claimant had moderate limitations in understanding, remembering, and carrying out instructions, making simple decisions, maintaining activities of daily living, and performing simple tasks on a sustained basis. (Ex. 1F/9) He continued his opinion with notations that the claimant has moderate to severe limitations in maintaining concentration for extended periods of time, functioning in proximity to others without being distracted, completing a task in a designated period of time, maintaining socially appropriate behavior, requesting assistance, and responding to criticism, performing complex tasks on a sustained basis, and performing regular job functions. (Ex. 1F/9) Dr. Ward's opinions were not given controlling weight, and was instead given little weight, because although he is a treating source for the claimant, his own notations indicate that the claimant had "only just started psychiatric meds (management) yesterday. Will need 2-3 months to achieve optimal progress." (Ex 1F/8) Thus the duration of his treating relationship with the claimant at the time of his opinion was not sufficient to warrant controlling weight, and his own notations indicate that claimant's condition

> was likely to improve in the 2-3 months that followed. Dr. Ward last saw the claimant as a patient in January 2017, without any update to the effects of claimants medications. (Ex. 4F/2)

(R.at 117-118.)

As this excerpt demonstrates, the ALJ's evaluation of Dr. Ward's opinions did not meaningfully consider his opinions under the required legal criteria set forth above. Instead, the ALJ collapsed the two-step evaluation procedure mandated by regulation into one by focusing on the "length of the treatment relationship" factor. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6). *Chapman v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-00205, 2020 WL 3971402, at *4 (S.D. Ohio July 14, 2020) (finding error where "[t]he ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely consideration of the remaining factors in the Regulations, such as the 'supportability' and 'consistency' factors."). "This constitutes error because this factor, along with the others listed in the regulations, is 'properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight.'" *Id.* (quoting *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (emphasis added) (citation omitted)).

The ALJ did not mention the treating source rule or the legal criteria applicable to determining whether Dr. Ward's opinions were due controlling weight under that rule. Because of these lapses, there is no way to ensure a meaningful review of whether the ALJ evaluated Dr. Ward's opinions under the correct legal criteria required by that rule. In short, the ALJ erred in two ways: (1) she did not evaluate Dr. Ward's opinions under the treating physician rule, and (2) she did not provide good reasons for any analysis she conducted of Dr. Ward's opinions under that rule. *Chapman*, 2020 WL 3971402, at *4; *Cf. Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) ("[A]n ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying

and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion." (citations omitted)); *see also Davis v. Comm'r of Soc. Sec.*, No. 2:17-CV-995, 2020 WL 1305030, at *7 (S.D. Ohio Mar. 19, 2020) (The ALJ must identify the specific evidence in the record that supports a finding that a treating physician's opinion was inconsistent with other substantial evidence in the record and apply the factors listed in 20 C.F.R. § 404.1527(c)(2)).

The Commissioner's arguments in support of the ALJ's decision, to the extent that they are on topic, are unavailing. First, while noting the treating physician rule, the Commissioner similarly collapses the two-step evaluation procedure in arguing that the duration of treatment was insufficient to warrant controlling weight and that Dr. Ward's own notations suggested expected improvement with medication and treatment. Further, although the Commissioner is correct that the ALJ was not obligated to give any weight to the portion of Dr. Ward's opinion that addressed issues reserved to the Commissioner, as discussed, this argument ignores the essence of the ALJ's error here. Notably, the Commissioner does not argue that the above errors were harmless. At most, the Commissioner cites the ALJ's application of other regulatory factors to conclude that Dr. Ward's opinion deserved little weight. Yet, even considering the evidence cited by the Commissioner, it does not nullify the ALJ's errors in connection with the treating physician rule. *See Wilson*, 378 F.3d at 545 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (6th Cir. 2004)).

In sum, in weighing the medical evidence, the ALJ failed to undertake a proper controlling weight analysis of Plaintiff's treating physician's opinion. For this reason, it is **RECOMMENDED** that Plaintiff's first contention of error be **SUSTAINED**.

## VII. CONCLUSION

Due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: April 13, 2021**                     **/s/** *Elizabeth A. Preston Deavers*
                                                          **ELIZABETH A. PRESTON DEAVERS**
                                                          **UNITED STATES MAGISTRATE JUDGE**